IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>*ex rel.* Mary Haggard<br><br>                     Plaintiffs,<br><br>vs.<br><br>DIVERSICARE MANAGEMENT SERVICES CO., MAYFIELD REHAB & SPECIAL CARE CENTER, and GARLAND NURSING & REHAB CENTER,<br><br>                     Defendants. | Civil Action No.<br><br><br>**FILED UNDER SEAL**<br>**Pursuant to 31 U.S.C. § 3730(b)(2)** |

## COMPLAINT

The United States of America, through *qui tam* Relator Mary Haggard ("Relator"), brings this action under the federal False Claims Act, 31 U.S.C. §§ 3729, *et seq.* ("FCA"), against Defendants Diversicare Management Services Co. ("Diversicare"), Mayfield Rehab & Special Care Center Center ("Mayfield"), and Garland Nursing & Rehab Center ("Garland"), and in support thereof, state as follows:

      1.     Mayfield is a nursing home and rehabilitation center located at 200 Mayfield Drive in Smynra, Tennessee.

      2.     Garland is a nursing home and rehabilitation center located at 610 Carpenter Dam Road in Hot Springs, Arkansas.

      3.     Both facilities are operated by Diversicare, which is headquartered at 1621 Galleria Boulevard in Brentwood, Tennessee.

4. Diversicare directs Mayfield and Garland's management to inflate the Activities of Daily Living ("ADL") and Resource Utilization Group ("RUG") scores of patients who are beneficiaries of the Medicare and/or Medicaid programs. These higher scores result in the government being overcharged for the patients' care.

5. As described herein, these falsely inflated claims for patient care were submitted in violation of the FCA. At the times Mayfield, Garland, and Diversicare (collectively, "Defendants") made, or caused to be made, each such claim for payment, Defendants knew that the claim was false and fraudulent. Defendants presented, or caused to be presented, each such claim for payment to the United States, knowing that it was false and fraudulent, in order to defraud the United States by causing them to pay these claims.

I. **JURISDICTION AND VENUE**

6. Relator brings this action on her own behalf and on behalf of the United States and under the *qui tam* provisions of the FCA.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3732(a) and (b), which confer jurisdiction over actions brought under 31 U.S.C §§ 3729 and 3730.

8. This Court has personal jurisdiction over Defendants and venue is proper in this District pursuant to 31 U.S.C. § 3732(a) because Defendants are found, transact business, and committed violations of the FCA in this District.

9. This action is not based upon prior public disclosure of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit or investigation; in a Government Accountability Office or Auditor General's report, hearing, audit, or

investigation; in news media; or in any other form as the term "publicly disclosed" is defined in 31 U.S.C. § 3730(e)(4)(A).

10. To the extent there has been a public disclosure unknown to Relator, she is an original source under 31 U.S.C. § 3730(e)(4). Relator has direct and independent knowledge of the information on which the allegations are based, and voluntarily provided this information to the United States and to the State of Tennessee before filing this action.

## II. PARTIES

11. Relator is a resident of the State of Tennessee with her principal residence in Smyrna, Tennessee. Relator was employed as Director of Nursing at Mayfield from January, 2011, to August, 2011.

12. Mayfield is a nursing home and rehabilitation center located at 200 Mayfield Drive in Smynra, Tennessee.

13. Garland is a nursing home and rehabilitation center located at 610 Carpenter Dam Road in Hot Springs, Arkansas.

14. Both Mayfield and Garland are operated by Diversicare, which is headquartered at 1621 Galleria Boulevard in Brentwood, Tennessee.

15. The United States is the real party in interest in this case, and ultimately paid the false claims alleged herein and are entitled to the bulk of Relator's recovery. Medicare is a federal health insurance program administered by CMS for the elderly and disabled. *See* 42 U.S.C. §§ 1395-1395hhh.

## III. RELEVANT LAW

### A. The False Claims Act

16. The FCA imposes liability on any person who knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval (31 U.S.C. § 3729(a)(1)(A)); knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim (§ 3729(a)(1)(B)); or conspires to commit such violations (§ 3729(a)(1)(C)).

17. The FCA defines the term "knowingly" to mean actual knowledge, deliberate ignorance of truth or falsity, or reckless disregard of truth or falsity, and no proof of specific intent to defraud is required (§ 3729(b)(1)) and defines "claim" to include any request or demand, whether under contract or otherwise, for money that is made to an agent of the United States or to a contractor if the money is to be spent to advance a government program or interest and the government provides or will reimburse any portion of the money (§ 3729(b)(2)).

18. Additionally, claims for payment knowingly submitted to Medicare that fail to meet the Medicare or Medicaid conditions of payment as set forth in applicable statutes, regulations or requirements constitute false claims under the FCA and TMFCA, creating liability for anyone who submitted false claims or caused or conspired to get those false claims submitted.

**B.  Medicare Part A**

19. Medicare is a federal health insurance program created by Congress in 1965 for the elderly and disabled. *See* 42 U.S.C. §§ 1395-1395hhh. It is the nation's largest health insurance program and covers nearly 40 million people. Medicare pays doctors, hospitals, pharmacies, and other providers and suppliers of medical goods and services according to government-established conditions and rates. *Id.* Medicare Part A is hospital insurance that helps cover certain types of care provided by institutional

providers within specified limits, including Skilled Nursing Facilities ("SNFs"). *See* 42 U.S.C. § 1395c.

### C. ADL and RUG Scores

20. SNFs are paid in a Medicare Part A stay through the Medicare Prospective Payment System (PPS) which employs a case mix adjustment system that assigns SNF residents to groups representing the quantity of SNF resources used by the resident.

21. Each group is placed into categories which have a daily dollar amount rate paid to SNFs. Each category is further broken down into individual groups (RUGs) based on "Activities of Daily Living" (ADL).

22. An "ADL index" is determined by summing up all the individual ADL scores for each of the four daily activities: bed mobility, transfer, eating, and toilet use. A higher score represents a greater dependency and a need for more assistance by nursing staff and a higher Medicare billing rate.

### IV. DEFENDANTS' UNLAWFUL CONDUCT

23. The unlawful conduct alleged herein involves patient care for which Defendants billed Medicare.

24. Since at least October, 2005 through at least August, 2011, and upon information and belief, since October, 2005 and continuing through the present, it has been Diversicare's regular corporate practice to cause its subsidiaries to inflate patients' ADL and RUG scores beyond what is medically indicated in order to charge higher fees to Medicare for patient care provided at the relevant facility.

## Diversicare

25. It is Diversicare's corporate policy to increase RUG scores above what its Medicare beneficiaries' actual medical condition warranted in order to get government healthcare programs to over-pay for patient care.

26. When the Relator attended a Diversicare-wide seminar at the Embassy Suites hotel in Nashville in May, 2011, Diversicare's then-CEO, Will Council, stressed the importance of increasing billing to maximize reimbursement, rather than the importance of billing accurately.

27. For example, Robin Jones, a Regional Director in Diversicare's corporate offices, would regularly threaten nurses with termination if the nurses indicated that they were unwilling to raise RUG scores above what was medically appropriate.

28. When Restorative Nurse Allison Mueller refused to raise RUG scores above what was medically appropriate, Regional Director Jones threatened to have Ms. Mueller's employment terminated unless she raised the scores in question.

## Mayfield

29. Since at least January, 2011 through at least August, 2011, and upon information and belief, since October, 2005 and continuing through the present, it has been Mayfield's regular practice to inflate patients' ADL and RUG scores in order to charge higher fees to Medicare and Medicaid for patient care provided at the facility.

30. To achieve higher levels of billing, Administrator Debbie Bowers routinely instructed Nursing Staff to re-assess and re-evaluate patients to increase ADL scores. Nursing Staff are advised to consider routine activities like handing a patient water or fastening a bra as meriting a point increase. As Ms. Bowers put it, "If you can

get a 5, you can get a 6!" Bowers emphasized that a 6 would get Diversicare an extra $40 per day per patient.

31. When employees fail or refuse to comply, Restorative Nurses are assigned to conduct additional assessments until administration is satisfied with the ADL score level. If the score is relatively low, the patient is re-assessed and given an increased score; only then are the patient scores charted in the system.

32. In addition, the Mayfield staff was instructed at daily morning meetings to employ measures to ensure that the patients stayed covered by Medicare for as long as possible. Upon information and belief, the billing for the facility would show that most of the residents that were covered by Medicare were staying at the facility for close to 100 days.

33. This practice is not limited to one facility but is the corporate policy of Diversicare, Mayfield's parent company, which operates several nursing homes and rehabilitation centers throughout the United States.

**Garland**

34. Since at least October, 2005 through at least October, 2007, and upon information and belief, continuing through the present, it has been Garland's regular practice to inflate patients' ADL and RUG scores in order to charge higher fees to Medicare for patient care provided at the facility.

35. For example, another colleague of Relator's was employed as a Director of Occupational Therapy for Garland, another facility operated by Diversicare, from October 2005 through October 2007. She was frequently instructed by administrator Steven Levato to increase her patients' RUG scores to meet targeted financial goals.

When it became apparent that she was not willing to comply with the corporation's practice of inflating patient assessments, this individual was told to resign.

## COUNT ONE
## FEDERAL FALSE CLAIMS ACT

36. Relator incorporates by reference the allegations above.

37. This is a claim for treble damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729(a)(1)(A), 3729(a)(1)(B), and 3729(a)(1)(C).

38. As a result of the misconduct alleged herein, Defendants knowingly presented, or caused to be presented, to the United States a false or fraudulent claim for payment or approval in violation of 31 U.S.C. § 3729(a)(1)(A).

39. As a result of the misconduct alleged herein, Defendants knowingly made, used, or caused to be made or used, a false record or a statement material to a false or fraudulent claim in violation of 31 U.S.C. § 3729(a)(1)(B).

40. As a result of the misconduct alleged herein, Defendants knowingly conspired to present, or cause to be presented, a false or fraudulent claim for payment or approval to the United States, and knowingly conspired to make, use, or caused to be made or used, a false record or statement material to false or fraudulent claims in violation of 31 U.S.C. § 3729(a)(1)(C).

41. The United States, unaware of the false or fraudulent nature of these claims, paid such claims when they would not otherwise have been paid.

42. By reason of these payments, the United States has been damaged, and continues to be damaged, in a substantial amount.

## PRAYER FOR RELIEF

WHEREFORE, Relator respectfully prays that judgment be entered against the Defendants, ordering that:

A. Defendants cease and desist from violating the FCA;

B. Defendants pay $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461) for each violation of the FCA, plus three times the amount of damages that the United States has sustained because of Defendants' actions;

C. Relator be awarded the maximum relator's share allowed under the FCA;

D. Relator be awarded all costs of this action, including attorneys' fees and costs pursuant to the FCA;

E. Defendants be enjoined from concealing, removing, encumbering, or disposing of assets which may be required to pay the damages, penalties, fines, attorneys' fees, and costs awarded by the Court;

F. Defendants disgorge all sums by which they have been enriched unjustly by their wrongful conduct; and

G. The United States and Relator be awarded such other relief as the Court deems just and proper.

## REQUEST FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Relator hereby demands a trial by jury.

Respectfully submitted,

PROVOST UMPHREY LAW FIRM LLP

By: *Michael Hamilton*
Michael Hamilton, Esq.
TN. BPR #010720
2021 Richard Jones Road, Suite 300
Nashville, Tennessee 37215
Tel: 615.242.0199
Fax: 615.256.5922
Email: mhamilton@provostumphrey.com

*Local Counsel for Plaintiff-Relator Mary Haggard*


Brad N. Friedman, Esq.
Ross B. Brooks, Esq.
**MILBERG LLP**
One Pennsylvania Plaza
New York, New York 10119-0165
Tel:    212.594.5300
Fax:    212.868.1229
Email:  kchapman@milberg.com
rbrooks@milberg.com

*Lead Counsel for Plaintiff-Relator Mary Haggard*


George Pressly, Esq.
**KYROS & PRESSLY LLP**
60 State Street, Suite 700
Boston, Massachusetts  02109
Tel:  603.320.7030
Email: gpressly@presslylaw.com

*Co-Counsel for Plaintiff-Relator Plaintiff-Relator Mary Haggard*